FILED

AUG - 6 2019

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

1  Name and Address  EVE DEL CASTELLO, Pho SE  ⑤

2     865 SAN JOSE AVE, #2

3     SAN FRANCISCO, CA 94110

4        415-282-0894

5              UNITED STATES DISTRICT COURT

6              NORTHERN DISTRICT OF CALIFORNIA

7                                              DMR

8                        CV 19 Case No 4561

9     EVE DEL CASTELLO

10         Plaintiff/Petitioner        Document Name:

                                                    #1
11       VS.                                       (WSK)
   CITY AND COUNTY OF S.F.)
12   DEPARTMENT OF ELECTIONS        RA

13                                   REQUEST FOR A PROPOSED

14         Defendant/Respondent      INIATIVE MEASURE BE
                                     COURT ORDERED OFF THE
15                                              BALLOT

16     THIS CASE REGARDS THE ILLEGAL/UNCONSTITUTIONAL
17     WORDING IN A PROPOSED INITIATIVE MEASURE - EXHIBIT II
    1. THIS COURT HAS JURISDICTION OVER THIS COMPLAINT
18     BECAUSE IT ARISES UNDER THE LAWS OF THE UNITED STATES.
19    2. 8-2-19, PLAINTIFF'S WRIT TO GET THE PROPOSED
       INIATIVE - COURT ORDERED OFF THE BALLOT WAS
20     DENIED. - EXHIBIT III
21
22    3. PAGE 3 OF EXHIBIT I REGARDS - (SECTION 2)
       "OF ORDINANCE" - PG 3
23     ARTICLE I, U.S.C. .... "DIRECT TAXES SHALL
24     BE APPORTIONED AMONG THE SEVERAL STATES ......"
25    PAGE 2, SECT. 3. OF my WRIT " WITH TAXES
26    FROM "WE THE PEOPLE".
27
28

Del Castello

Pg 2

US.

City & County of S.F.
Department of Election

4. Amendment IV, U.S.C. "...... le NOR
   Section 1
   DENY TO ANY PERSON WITHIN ITS JURISDICTION the
   EQUAL PROTECTION OF THE LAWS AND CIVIL Code,
   Sect. 3345 " to REDRESS UNFAIR OR DECEPTIVE
   ACTS OR PRACTICES". - SEE Page 2, Exhibit I
   SECTION 1. "NOT THE GREATER PERCENTAGE OF   ORDINANCE
   THE POPULATION" ON MY Writ                  ATTACHED

5. ON page 2, SECTION 2 OF MY WRIT EXHIBIT I
   REGARDS A FALSE STATEMENT - HOW CAN
   WE TRUST THE "Planning Commission" ?
   AND Pg 2, SECTION 4 ON MY WRIT EXHIBIT I
   REGARDS, AMENDMENT IV, U.S.C. - "giving
   up OUR RIGHTS ......

8-6-19
Date

Eric Del Castello
(EVE Del Castello)

EVE DEL CASTELLO

VS.

CITY AND COUNTY OF S.F.,
DEPARTMENT OF ELECTIONS

DECLARATION OF
PLAINTIFF EVE DEL CASTELLO
IN SUPPORT OF COMPLAINT

EXHIBIT I — COPY OF PROPOSED
INITIATIVE MEASURE
SUBJECT: ORDINANCE — PLANNING CODE —
AFFORDABLE HOMES FOR EDUCATORS
AND FAMILIES NOW

IS ATTACHED TO
EXHIBIT II — COPY OF SUPREME COURT, S.F.
§ 257211 — WRIT DENIED
WITH ORDINANCE ATTACHED

I HEREBY DECLARE UNDER PENALTY OF
PERJURY THAT THE FOREGOING IS TRUE
AND CORRECT.
EXECUTED ON 8-6-19

SUPREME COURT
# FILED

AUG 0 2 2019

Jorge Navarrete Clerk

_____

Deputy

S257211

# IN THE SUPREME COURT OF CALIFORNIA

## En Banc

---

EVE DEL CASTELLO, Petitioner,

v.

CITY AND COUNTY OF SAN FRANCISCO, DEPARTMENT OF ELECTIONS, Respondent.

---

The petition for writ of mandate and application for stay are denied.

CANTIL-SAKAUYE
_____
*Chief Justice*

CASE NO._____

IN THE SUPREME COURT

FOR THE STATE OF CALIFORNIA

_____

EVE DEL CASTELLO,                          Plaintiff

        vs.

City and County of San Francisco
DEPARTMENT OF ELECTIONS,                   Respondent

_____

WRIT OF MANDATE
_____

Eve Del Castello, In Pro Per
865 San Jose Ave., #2
San Francisco, CA 94110
(415) 282-0894

PETITIONER

STAY REQUESTED
Designation of Letters
for Local Ballot Measures
August 12, 2019 @ 11:00 A.M.

RECEIVED

AUG 0 1 2019

CLERK SUPREME COURT

## TABLE OF CONTENTS

VERIFICATION AND CERTIFICATE OF WORD COUNT.........page 1
PETITION FOR WRIT OF MANDATE......................page 2
EXHIBIT A...................
     Proposed Iniative Measure (in question) - Attached
PROOF OF SERVICE...........................Separately
                                            .......page 3

### TABLE OF AUTHORITIES

U.S. Constitution XIV; Calif. Constitution, Article I

Civil Code, Section 3345 "to redress unfair or deceptive
acts or practices"

## VERIFICATION

I, Eve Del Castello, am the petitioner as to this Writ to the Supreme Court for the State of California and based on my own knowledge I know of the matters contained herein. If called to testify in court as to these matters, I would do so and declare under penalty of perjury under the laws of the State of California that the matters herein are true and correct and that this declaration is made on this August 1, 2019.

Eve Del Castello

## CERTIFICATE OF WORD COUT

I, Eve Del Castello pursuant to Rules of the Court have examined the word count and find that the totals are as follows:  I certify that the context of the ~~foregoing~~ document is not more than 240 words not including attachments, cover, Table of Contents andproof of service.

Eve Del Castello

Page 1

## PETITION FOR WRIT OF MANDATE

Petitioner, Eve Del Castello, requests the attached initiative, "Initiative Ordinance - Planning Code - Affordable Homes for Educators and Families Now" should not, in its entirety, be printed on the Ballot this November 5, 2019 for the following reasons:

1.  From Page 1 of the iniative - the use of the phrase, 100 Percent Affordable Housing is misleading.   This document only notes housing for educators - not the greater percentage of the population here in S.F., CA.   This is unconstitutional.

2.  Page 4, Section (k) "preserving our parks" could be a false statement - On Sacramento and Grant Ave. in San Francisco, a park was torn up for some sort of development currently under construction.

3.  Page 3 (g) S.F. Housing Trust Fund 2012 allocated 50 Million Dollars a year for 100% Affordable Housing (?).   This, also sounds like the remaining "Findings" are mainly subsidizing developers with Taxes from "We the People".

4.  On Pg. 9 (h) and Pg 15 (Section 7) suggests that we are giving our rights up to 2/3's of the Board of Supervisors to Amend the Ordinance and thus preserve our beautiful city.

STAY REQUESTED because the attached iniative will be designated with a Letter and thus allowed to print on the Ballot by August 12, 2019 @ 11:00 A.M. unless the Department of Elections, (415) 554-4375, 1 Dr. Carlton B. Goodlet Place, City Hall, Rm. 48, San Francisco, CA 94102 is Court Ordered not to be printed.

Page 2

PROOF OF SERVICE

I, Eve Del Castello declare, under penalty of perjury:

I am over age 18, not a party to this action, and I reside

in San Francisco County.  On August 1, 2019, I transmitted

the following named document, Writ of Mandate to the parties

named below by Hand:

> To the Clerk of the Supreme Court for the State
> of California, San Francisco County, 350 Mc Allister St.,
> San Francisco, CA

> and to the Department of Elections, 1 Dr. Carlton B.
> Goodlet Place, City Hall, Room 48, San Francisco, CA

Dated August 1, 2019

EXHIBIT A

Submittal Form for Proposed Iniative Meaure

Subject: Initiative Ordinance - Planning Code -
Affordable Homes for Educators and Families Now

-        Attached        -

RECEIVED

AUG 0 1 2019

CLERK SUPREME COURT

SAN FRANCISCO
FILED

2019 JUN 18 PH 4:38

## Submittal Form
### For Proposed Initiative Measure(s)
### Prior to Submittal to the Department of Elections

DEPARTMENT OF ELECTIONS

## by 4 or more Supervisors or the Mayor

I, hereby submit the following proposed initiative measure(s) for hearing before the Board of Supervisors' Rules Committee prior to the submittal of the proposed initiative measure to the Department of Elections (Proposition C, November 2007).

This matter is for the **November 5, 2019** Election.

Sponsor(s):  Supervisors Fewer; Peskin, Walton and Haney

**Subject:** [Initiative Ordinance - Planning Code - Affordable Homes for Educators and Families Now]

The long title text is listed below and full text attached:
Ordinance amending the Planning Code to create the 100 Percent Affordable Housing and Educator Housing Streamlining Program; to allow affordable housing and affordable teacher housing in Public zoning districts; and to provide timelines for the review and approval of affordable housing and affordable teacher housing.
(See attached.)

Supervisor Sandra Fewer: _____

Supervisor Aaron Peskin: _____

Supervisor Shaman Walton: _____

Supervisor Matt Haney: _____

(Clerk of the Board's Time Stamp)

SAN FRANCISCO
FILED

2019 JUN 18 PM 4:38

DEPARTMENT OF ELECTIONS

**PROPOSED INITIATIVE ORDINANCE TO BE SUBMITTED BY FOUR OR MORE SUPERVISORS TO THE VOTERS AT THE NOVEMBER 5, 2019 ELECTION.**

[Under Charter Section 2.113(b), this measure must be submitted to the Board of Supervisors and filed with the Department of Elections no less than *45 days prior* to deadline for submission of such initiatives to the Department of Elections set in Municipal Elections Code Section 300(b).]

[Initiative Ordinance - Planning Code - Affordable Homes for Educators and Families Now]

Ordinance amending the Planning Code to create the 100 Percent Affordable Housing and Educator Housing Streamlining Program; to allow affordable housing and affordable teacher housing in Public zoning districts; and to provide timelines for the review and approval of affordable housing and affordable teacher housing.

NOTE:    **Unchanged Code text and uncodified text** are in plain font.
**Additions to Codes** are in *single-underline italics Times New Roman font*.
**Deletions to Codes** are in ~~strikethrough italics Times New Roman font~~.
**Asterisks (\* \* \* \*)** indicate the omission of unchanged Code subsections or parts of tables.

Be it ordained by the People of the City and County of San Francisco:

Section 1.  Findings:

(a)  San Francisco is in a severe housing crisis.  The shortage of affordable housing has forced lower income and middle class families out of the City.  There is a need to make it easier to build affordable and middle-income housing to keep our city diverse, and provide homes for lower and middle income workers, including teachers and education staff.  In the midst of this severe housing shortage and affordability crisis, San Francisco must prioritize

Page 1

resources for the expedited construction of housing for low and middle income residents and working families, including for our educators.

(b) Educators and other employees of both the San Francisco Unified School District ("SFUSD") and San Francisco Community College District ("SFCCD") suffer acutely from the City's severe affordable housing shortage, with 50% of SFUSD teachers leaving the district within the first five years of teaching, often because of high housing costs, eviction displacement and the escalating cost of living. When it comes to providing quality public education for our students, it is far preferable for educators to live in the city and district in which they teach.

(c) SFUSD educators include para-professional and early childcare educators earning 35% of Area Median Income (or $33,150 a year for a two-person household in 2018) up to veteran teachers making 140% of Area Median Income (or $132,600 a year for a two-person household in 2018), often making it difficult for them to be income eligible for traditional tax-credit funded 100% affordable housing.

(d) The purpose of the Affordable Homes for Educators and Families Now Initiative is to facilitate and expedite the development and construction of 100% affordable and educator housing in San Francisco.

(e) Affordable housing is an especially paramount concern in San Francisco. San Francisco has one of the highest housing costs in the nation, but San Francisco's economy and culture rely on a diverse workforce at all income levels. It is the policy of the City to enable these workers to afford housing in San Francisco and ensure that they pay a reasonably proportionate share of their incomes to live in adequate housing and to not have to commute ever-increasing distances to their jobs. The Association of Bay Area Governments determined that San Francisco's share of the Regional Housing Need for January 2015 to

June 2022 was the provision of 28,870 new housing units, with 6,234 (or 21.6%) as very low, 4,639 (or 16.1%) as low, and 5,460 (or 18.9%) as moderate income units.

(f) San Francisco is on track to exceed easily its Regional Housing Need for market rate housing production, but the City is falling well short of its needs for very-low, low, and moderate-income housing. As of December 2018, the City had already produced 96% of the market rate units needed to meet its goal for above moderate-income housing by June 2022. However, the City had only produced 31% of the affordable units needed to meet its goals for very-low, low, and moderate-income housing.

(g) The Board of Supervisors, and the voters in San Francisco, have long recognized the need for the production of affordable housing. Both have adopted measures to address this need, such as the San Francisco Housing Trust Fund, adopted in 2012, which established a fund to create, support, and rehabilitate affordable housing, and set aside $20 million in its first year, with increasing allocations to reach $50 million a year for affordable housing; the adoption of Proposition K in November 2014, which established as City policy that the City, by 2020, will help construct or rehabilitate at least 30,000 homes, with more than 50% of the housing affordable for middle-income households, and at least 33% as affordable for low- and moderate income households, as well as prioritize surplus public land for 100% affordable and homeless housing; the Inclusionary Affordable Housing Program in Planning Code Section 415; the Affordable Housing Acquisition & Rehabilitation Fund in 2016, now known as the PASS program; the Affordable Housing Production and Preservation Fund, established in 2019, to receive appropriated excess Education Revenue Augmentation Fund revenues received by the City, for the purpose of funding land acquisition and production of new 100% affordable housing projects, as well as the acquisition and preservation of existing housing to make that housing permanently affordable; and the multiple programs that rely on Federal, State and local funding sources as identified in the Mayor's Office of Housing and Community

Development Consolidated Plan. These programs enable the City to work towards the voter-mandated affordable housing goals of the City and County of San Francisco.

(h) Streamlined review will enable the City to expedite development of 100% Affordable Housing and Educator Housing projects, and extend existing local streamlining policies already applicable to 100% affordable housing to educator housing, thus reducing the time and expense required to ensure that projects are code-compliant on the front end.

(i) A new category of affordable housing program eligible for streamlining is necessary to pilot, given that 100% affordable housing projects only receive critical tax credits for projects up to 80% of Area Median Income, which leave many of the SFUSD's 4,500 teachers behind in terms of income eligibility. The tremendous value of SFUSD and SFCCD public lands must be leveraged strategically to attract a variety of funding sources and other concessions and benefits.

(j) An affordable housing zoning overlay within existing height limits creates a strong baseline for affordable housing on sites larger than 10,000 square feet throughout the City that are feasible for development, creating competitive opportunities for affordable housing without the need for rezoning, variances, or density bonuses.

(k) This Affordable Homes for Educators and Families Now Initiative Ordinance is consistent with the City's development policies set forth in the General Plan and elsewhere in the Planning Code. Facilitating the development and construction of 100% affordable housing and affordable teacher housing enhances the supply of affordable housing and helps preserve the cultural and economic diversity of our neighborhoods. Likewise, allowing limited development on public lands, while preserving our parks, appropriately balances the need for affordable housing and housing for teachers with the need to preserve and maintain San Francisco's open space.

Section 2.  Article 2 of the Planning Code is hereby amended by revising Section 206 and adding Section 206.9, to read as follows:

**SECTION 206.  THE AFFORDABLE HOUSING** ~~BONUS~~ *AND EDUCATOR HOUSING* **PROGRAMS.**

This section shall be known as the Affordable Housing ~~Bonus~~ *and Educator Housing* Programs, which include the HOME-SF Program, the 100 Percent Affordable Housing Bonus Program, the Analyzed State Density Bonus Program, *and* the Individually Requested State Density Bonus Program, *and the 100% Affordable Housing and Educator Housing Streamlining Program*.

\* \* \* \*

***SECTION 206.9.  100% AFFORDABLE HOUSING AND EDUCATOR HOUSING STREAMLINING PROGRAM.***

*(a)  **Purpose.**  The purpose of the 100% Affordable Housing and Educator Housing Streamlining Program is to facilitate the construction and development of 100% Affordable Housing Projects and Affordable Educator Housing Projects, as defined in subsection (b), in which Residential Units are affordable to Very-Low, Low, and Moderate Income Households.*

*(b)  **Definitions.**  The definitions of Section 102 and the definitions in Section 401 for "Area Median Income" or "AMI," "Housing Project," and "Life of the Project," shall generally apply to Section 206.9.  The following definitions shall also apply, and shall prevail if there is a conflict with other sections of the Planning Code, including Section 206.2.*

*(1)  "100% Affordable Housing."  Residential Units that are deed-restricted for 55 years or the Life of the Project, whichever is longer and consistent with any applicable tax credit regulatory requirements, to be affordable to Very-Low, Low, or Moderate income households with an income up to 120% of the unadjusted area median family income (AMI) for the HUD Metro Fair Market Rent Area (HMFA) that contains San Francisco, as published annually by MOHCD.*

    (2) *"100% Affordable Housing Project." A project for the development of Residential Units all of which are 100% Affordable Housing, up to a maximum overall average of 80% AMI across all Residential Units in the project. A 100% Affordable Housing Project may also include principally permitted non-residential uses on the ground floor, and non-residential uses that are accessory to and supportive of the affordable housing. Notwithstanding the foregoing, the maximum affordable rent or sales price for a Residential Unit in a 100% Affordable Housing Project may be no higher than 20% below median market rents or sales prices for that unit size in the neighborhood in which the project is located, which neighborhood shall be defined in accordance with the American Community Survey Neighborhood Profile Boundaries Map. MOHCD shall determine the allowable rents and sales prices, and the eligible households for such units accordingly.*

    (3) *"Educator Housing Project." A project for the development of deed-restricted Residential Units all of which are restricted for the Life of the Project or 55 years, whichever is longer and consistent with any applicable tax credit regulatory requirements, to occupancy by at least one employee of the San Francisco Unified School District ("SFUSD") or San Francisco Community College District ("SFCCD"), as verified by the Planning Department or MOHCD. At least four-fifths of the units in an Educator Housing Project must be deed restricted for the Life of the Project or 55 years, whichever is longer and consistent with any applicable tax credit regulatory requirements to be affordable to households with an income from 30% to 140% of the unadjusted area median family income (AMI), with an overall average of 100% AMI across all such units. Up to one-fifth of the units may be deed restricted up to a maximum 160% AMI for the HUD Metro Fair Market Rent Area (HMFA) that contains San Francisco, as published annually by MOHCD. An Educator Housing Project is also allowed to be a mixed-use development project with a maximum 20% of the gross building square footage designated for non-residential neighborhood-serving uses.*

(A)  No units in an Educator Housing Project shall be smaller than the minimum unit sizes set forth by the California Tax Credit Allocation Committee as of May 16, 2017, or smaller than 300 square feet for a studio.

(B)  Any units in an Educator Housing Project with a rental rate set at 120% of Area Median Income or above shall have a minimum occupancy of two persons.

(C)  Notwithstanding any other provision of this Code, an Educator Housing Project shall include a minimum of 30% of the total units as 2-bedroom units and a minimum of 20% of the total units as 3-bedroom units or larger.

All references in this Section 206.9 to other sections of the Planning Code shall refer to those other sections as they may be amended from time to time after the effective date of the initiative measure enacting this Section 206.9.

(c)  **Applicability.**  A 100% Affordable Housing Project or Educator Housing Project under this Section 206.9 shall be a Housing Project that:

(1)  is located in any zoning district that allows Residential Uses;

(2)  is located on a lot or lots equal to or greater than 10,000 square feet;

(3)  is not located on land under the jurisdiction of the Recreation and Parks Department for the purpose of a public park;

(4)  meets the definition of a "100 Percent Affordable Housing Project" or an "Educator Housing Project" in subsection (b); and

(5)  does not demolish, remove, or convert any Residential Units, and does not include any other parcel that has any Residential Units that would be demolished, removed, or converted as part of the project.

(d)  **Density.**  Notwithstanding any other provisions of this Code, density of an 100% Affordable Housing Project or Educator Housing Project shall not be limited by lot area or zoning district maximums but rather by the applicable requirements and limitations set forth elsewhere in this Code,

*including consistency with the Affordable Housing Bonus Program Design Guidelines, referenced in Section 315.1, as determined by the Planning Department.*

*(e) **Zoning Modifications.** Notwithstanding any other provision of this Code, 100% Affordable Housing Projects and Educator Housing Projects may select any or all of the following Planning Code modifications:*

*(1)  Rear Yard.  The required rear yard per Section 134 or any applicable special use district may be reduced to no less than 15 feet.  Rear yards shall be provided with an open area at the lowest story containing a Dwelling Unit, and at each succeeding level or story of the building. Projects located on corner parcels may meet the minimum rear yard requirement at the interior corner of the property provided that each horizontal dimension of the open space is a minimum of 15 feet, and that the open area is wholly or partially contiguous to the existing midblock open space, if any, formed by the rear yards of adjacent properties, and provides for access to light and air to and views from adjacent properties.*

*(2)  Open Space.  The required common open space per Section 135 may be reduced to no less than 36 square feet of open space per unit.*

*(3)  Inner Courts as Open Space.  Inner courts qualifying as useable common open space per Section 135(g)(2) may be provided by courtyards with no less than 25 feet in every horizontal dimension, with no restriction on the heights of adjacent walls. All area within such an inner court shall qualify as common open space under Section 135.*

*(4)  Dwelling Unit Exposure.  The dwelling unit exposure requirements of Section 140(a)(2) may be satisfied through qualifying windows facing an unobstructed open area that is no less than 15 feet in every horizontal dimension, and such open area is not required to expand in every horizontal dimension at each subsequent floor.*

*(5)  Required commercial space. Notwithstanding any other provision of this Code, any required ground-floor commercial space may include Arts Activities or Neighborhood-Serving*

*Businesses, as defined in Section 102. Ground floor commercial spaces accessory to the 100%*
*Affordable Housing or Educator Housing Project shall not be limited by use size restrictions. Ground*
*floor Arts Activities or Neighborhood-Serving Businesses shall be considered active uses if more than*
*50 percent of the linear street frontage provides transparent walls and direct pedestrian access to a*
*public sidewalk, and are consistent with the Ground Floor Residential Design Guidelines.*

      *(6)  Ground Floor Ceiling Height.  Projects with active ground floors, as defined in*
*Section 145.1(b)(2), shall receive up to a maximum of an additional five feet above the height limit,*
*exclusively to provide a minimum 14-foot (floor to ceiling) ground floor ceiling height.*

      *(7)  Projects located entirely or partially on a parcel or parcels designated on the San*
*Francisco Zoning Map as open space (OS) that are not under the jurisdiction of the Recreation and*
*Parks Department shall be deemed to have a height limit and a bulk designation of the closest zoning*
*district that allows Residential Uses.*

    *(f)  **Controls**.  Notwithstanding any other provision of this Code, no conditional use*
*authorization shall be required for a 100% Affordable Housing Project and Educator Housing Project,*
*unless the voters adopted such conditional use requirement.*

    *(g)  **Authorization**.  Projects under this Section 206.9 shall be approved under the provisions*
*set forth in Section 315.*

    *(h)  **Amendment by Board of Supervisors**.  The Board of Supervisors by not less than two-*
*thirds vote of all its members may by ordinance amend any part of this Section 206.9 if the amendment*
*furthers the purpose of this Section.*

    Section 3.  Article 2 of the Planning Code is hereby amended by revising Section
211.1, to read as follows:

## SEC. 211.1.  PRINCIPAL USES PERMITTED, P DISTRICTS.

The following uses are principally permitted in all P Districts when found to be in conformity with the General Plan:

\*    \*    \*    \*

(g)  Any temporary use not considered in Subsection (f) above for which an enabling action is taken by either the Board of Supervisors, the Recreation and Parks Commission, the Municipal Transportation Agency Board of Directors, or other City Board or Commission with jurisdiction over the property. Temporary uses authorized under this Subsection (g) shall be:

(A)(1)  Limited to a renewable period of no more than three years as approved by the Zoning Administrator, and

(B)(2)  Be of Of a nature such that the property on which the temporary use is located can be readily returned to the state in which it existed immediately prior to the commencement of the temporary use.

(h)  A publicly-owned and operated Wireless Telecommunications Services Facility used primarily for public communication systems.

(i)  Residential Uses in 100% Affordable Housing Projects and Educator Housing Projects, as defined in Section 206.9, unless such property is under the jurisdiction of the San Francisco Recreation and Parks Department and used as a public park.  Except for modifications otherwise allowed by this Code, any such Residential Uses shall comply with controls and notification requirements for the closest zoning district that allows Residential Uses.

Section 4.  Article 3 of the Planning Code is hereby amended by revising Section 315, to read as follows:

**SEC. 315.  _STREAMLINED AUTHORIZATION OF 100%_ AFFORDABLE HOUSING _AND EDUCATOR HOUSING_ PROJECT_S_ _AUTHORIZATION_.**

(a)  Purpose. The purpose of this Section 315 is to ensure that any project where the principal use is affordable housing, defined in subsection (b) as an Affordable Housing Project, is reviewed in coordination with relevant priority processing and design guidelines.

(b)  Applicability. Notwithstanding anything to the contrary contained in this Planning Code, this Section 315 shall apply to any project where the principal use is housing comprised solely of housing that is restricted for a minimum of 55 years *or the Life of the Project, whichever is longer and consistent with any applicable tax credit regulatory requirements,* as affordable for "persons and families of low or moderate income," as defined in California Health & Safety Code Section 50093 (an "Affordable Housing Project"). The Affordable Housing Project shall be considered a principally permitted use and shall comply with the administrative review procedures set forth in this Section and shall not require conditional use authorization or a Planning Commission hearing that otherwise may be required by the Planning Code, provided that the site ~~is not designated as public open space,~~ is not under the jurisdiction of the Recreation and Park Department, is not located in a zoning district that prohibits residential uses~~, or is not located in an RH zoning district~~.

(1)  If a conditional use authorization or other Planning Commission approval is required for provision of parking, where the amount of parking provided exceeds the base amount permitted as accessory in Planning Code Article 1.5, such requirement shall apply.

(2)  If an Affordable Housing Project proposes demolition or change in use of a general grocery store or movie theatre, this Section shall not apply.

(3)  If a non-residential use contained in any proposed project would require conditional use authorization, such requirement shall apply unless the non-residential use is accessory to and supportive of the affordable housing on-site.

(c)  Review Process.

(1) In lieu of any otherwise required Planning Commission authorization and associated hearing, the Planning Department shall administratively review and evaluate the physical aspects of an Affordable Housing Project and review such projects in coordination with relevant priority processing and *expedited* design guidelines. The review of an Affordable Housing Project shall be conducted as part of, and incorporated into, a related building permit application or other required project authorizations, and no additional application fee shall be required. An Affordable Housing Project may seek exceptions to Planning Code requirements that are available through the Planning Code. This includes, but is not limited to, those exceptions permitted through Sections 253, 303, 304, 309, and 329. The Planning Department may grant such exceptions if it makes the findings as required in subsection (c)(2). An Affordable Housing Project may seek exceptions from other Code requirements that could otherwise be granted to a Planned Unit Development as set forth in Section 304, irrespective of the zoning district in which the property is located and irrespective of lot size requirements set forth in Section 304, and provided further that conditional use authorization shall not be required.

100 Percent Affordable Housing Bonus Projects seeking density bonuses, zoning modifications, or Planning Code exceptions pursuant to Section 206.4 of this Code shall be subject to the provisions and review process pursuant to Section 315.1 of this Code.

(2) This administrative review shall be identical in purpose and intent to any Planning Commission review that would otherwise be required by the Planning Code, including but not limited to Sections 253, 303, 304, 309 or 329, but shall not be considered a conditional use authorization. If an Affordable Housing Project would otherwise be subject to such Planning Code provisions, the Planning Department shall consider all the criteria set forth in such Planning Code sections and shall make all required findings in writing when it approves, modifies, conditions, or disapproves an Affordable Housing Project. If the project is

seeking exceptions solely as provided in this Section 315, the Department shall only make those required findings set forth in Section 303(c) of this Code.

(3)  Decision and Imposition of Conditions. The Planning Department, after making appropriate findings, may approve, disapprove or approve subject to conditions the Affordable Housing Project and any associated requests for exceptions as part of a related building permit application or other required project authorizations. As part of its review and decision, the Planning Department may impose additional conditions, requirements, modifications, and limitations on a proposed Affordable Housing Project in order to achieve the objectives, policies, and intent of the General Plan or the Planning Code. Such determination shall be made in writing and mailed to the project sponsor and individuals or organizations who so request.

(4)  Change of Conditions. Once a project is approved, authorization of a change in any condition previously imposed by the Planning Department shall require approval by the Planning Director subject to the procedures set forth in this Section 315.

(5)  Discretionary Review. As long as the Planning Commission has delegated its authority to the Planning Department to review applications for an Affordable Housing Project, the Planning Commission shall not hold a public hearing for discretionary review of an Affordable Housing Project that is subject to this Section 315.

(6)  *Review under this subsection (c) shall be completed as follows:*

*(A)  Within 90 day of submittal of a complete development application if the project contains 150 or fewer Residential Units.*

*(B)  Within 180 days of submittal of a complete development application if the project contains more than 150 Residential Units.*

(d)  Appeals. The Planning Department's administrative determination regarding an Affordable Housing Project pursuant to this Section 315 shall be considered part of a related

building permit. Any appeal of such determination shall be made through the associated building permit.

  *(e)  Streamlined Provisions for Educator Housing Projects.  The purpose of this Section 315(e) is to facilitate the construction of Educator Housing Projects, as defined in Section 206.9, and to evaluate the efficacy of streamlined approval for such projects.*

  *(1)  This Section 315 shall also apply to Educator Housing Projects, as defined in Section 206.9.*

  *(2)  The Planning Department may approve up to a total of 500 units of Educator Housing under this Section, after which the Planning Department shall submit a report to the Board of Supervisors that evaluates the efficacy of streamlined approval for Educator Housing as it relates to City policies and goals including, but not limited to Proposition K (November 2014), the Housing Element of the San Francisco General Plan, and the Surplus Land Ordinance, and reviews whether to increase the numerical cap on the number of Educator Housing Project units or otherwise amend the modifications and requirements in Section 206.9.  The report shall include, but shall not be limited to, the following information:*

  *(A)  Financing details of Educator Housing Projects, including the amount of public subsidy, if any;*

  *(B)  Tenant recruitment and leasing outreach plans for non-residential neighborhood-serving uses;*

  *(C)  Eligibility and placement plans for Educator Housing Projects constructed in partnership with the San Francisco Unified School District or the San Francisco City College District;*

  *(D)  The number of educators/employees who have applied for housing in an Educator Housing Project;*

  *(E)  Area Median Incomes for Educator Housing Projects; and*

*(F)  Plans for monitoring and verifying eligibility on an annual basis.*

Section 5  Additional findings.  The People of the City and County of San Francisco specifically find that, for the reasons set forth in Section 1, this ordinance is consistent with the San Francisco General Plan and the Priority Policies set forth in San Francisco Planning Code Section 101.1, and the actions in this ordinance will serve the public necessity, convenience, and welfare pursuant to San Francisco Planning Code Section 302.

Section 6.  Scope of Ordinance.  In enacting this ordinance, the People of the City and County of San Francisco intend to amend only those words, phrases, paragraphs, subsections, sections, articles, numbers, punctuation marks, charts, diagrams, or any other constituent parts of the Municipal Code that are explicitly shown in this ordinance as additions or deletions, in accordance with the "Note" that appears under the official title of the ordinance.

Section 7.  Amendment by Board of Supervisors.  The Board of Supervisors by not less than two-thirds vote of all its members may by ordinance amend any part of this measure if the amendment furthers the purpose of this measure.

SUBMITTED.

_____    Date:  June 18, 2019
Supervisor Fewer
Member, Board of Supervisors

Page 15

Date: $6-18-19$ .

Supervisor Peskin
Member, Board of Supervisors

Date: $6/18/19$

Supervisor Walton
Member, Board of Supervisors

Date: $6/18/19$

Supervisor Haney
Member, Board of Supervisors

DEPARTMENT OF ELECTION
2019 JUN 18  PM 4: 38
SAN FRANCISCO
FILED